**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                             CRIMINAL NO. 18-20801

vs.

D-1 RANSOM MURRAY BUTLER,        HON. JUDITH E. LEVY

        Defendant.
_____/

**UNITED STATES RESPONSE TO DEF. MOTION TO**
**SUPPRESS STATEMENT (ECF#20)**

On September 1, 2018, Officers Teschendorf and Gomez were on patrol in Westland.  They saw a Chrysler 300 behind them, travelling with the bright lights activated.  As the Chrysler passed their patrol car, the officers observed that the windshield was cracked.  They initiated a traffic stop at that time.

As the officers approached to speak with Mr. Butler, who was driving the car, Butler explained his driver's side headlight was installed incorrectly causing the light to point upward.

The officers could smell the odor of marijuana emanating from the car as they spoke with Butler.  Searcy, the passenger, advised the officers that he and Butler were coming from a party where marijuana was being

smoked. Butler and Searcy advised Ofc. Teschendorf that neither of them possessed a medical marijuana card. Teschendorf requested authority to search the vehicle, and Butler's person and Mr. Butler consented to the search. As the pat down search of Butler was being conducted, Ofc. Teschendorf felt what he believed to be narcotics in Butler's buttocks area. Butler then began clenching his buttocks and pulling away from Teschendorf in what the officer thought was an attempt to deter his search. Teschendorf handcuffed Mr. Butler and asked about the object he felt in Butler's pants. Butler then began to yell to Searcy advising Searcy to call his (Butler's) wife.

Mr. Butler was placed in the rear seat of a patrol car and monitored by Ofc. Gomez to make certain that Butler did not dispose of any drugs in his possession. The officers then learned that there was a valid arrest warrant pending for Mr. Butler, and he was placed under arrest.

A later strip search of Mr. Butler at the Westland Police Department revealed the Mr. Butler was in possession of approximately 35 grams of crack cocaine. Following the search, Butler, in a recorded statement, advised Officer Richardson that he had been selling crack cocaine for the past year.

Defendant Butler now requests that the evidence obtained from the search and any statement he made be suppressed.

As the search of Butler, and his vehicle, and the statements Butler made were lawful, his motion should be denied.

MATTHEW SCHNEIDER
United States Attorney

*s/John N. O'Brien II*
John N. O'Brien II
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
(313) 226-9715
John.obrien@usdoj.gov

## BRIEF IN SUPPORT OF RESPONSE TO DEF. MOTION TO SUPPRESS STATEMENT (ECF#20)

## ARGUMENT AND LEGAL AUTHORITY

The Fourth Amendment to the United States Constitution protects the rights of individuals against unreasonable searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir.2014). A search occurs when the Government acquires information by either "physically intruding on persons, houses, papers, or effects" or otherwise invades an area in which the individual has a reasonable expectation of privacy. *Id.* (citing *Florida v. Jardines*, – U.S.–, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013)). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Id.* (citing *United States v. Jones*, – U.S.–, 132 S.Ct. 945 n. 5, 181 L.Ed.2d 911 (2012)). The party seeking suppression of evidence obtained by a search has the burden of proving that the search was unlawful. *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir.1991).

Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S.

4

213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Spinelli v. U.S.*, supra, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).

**Westland officers properly stopped Butler's vehicle and were given authority to search the car and Butler's person by the Defendant.**

A warrantless seizure is presumptively unreasonable, but "[t]he Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or Terry stop which must be predicated upon 'reasonable suspicion;' and (3) arrests which must be based upon 'probable cause.'" *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) citing *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir.2008).

5

Under the second type of permissible encounter, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot." *Wardlow*, 528 U.S. at 123 (citing *Terry*, 392 U.S. at 31). The constitutionality of a Terry stop is evaluated by a two-step analysis: first, there must be a proper basis for the stop; second, the degree of intrusion must be reasonably related in scope to the situation at hand. *United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008). To be constitutionally proper, a Terry stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity ... the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); see also *District of Columbia v. Wesby*, 138 S. Ct. 577, 588, (2018); *United States v. Arvizu,* 534 U.S. 266, 273 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of

each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."). *United States v. Reid*, No. 17-CR-20172-SHL, 2018 WL 3056696, at *2 (W.D. Tenn. Mar. 6, 2018), report and recommendation adopted, No. 2:17-CR-20172-SHL-1, 2018 WL 1911137 (W.D. Tenn. Apr. 23, 2018)

Butler quickly advised that he was aware of the reason he was stopped by the Westland police. His passenger then offered an explanation for why the officers would have smelled marijuana. The questions posed to Butler at that time were akin to general informational questions and did not rise to the level of a custodial interrogation.

"Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Illinois v. Lidster*, 540 U.S. 419, 124 S.Ct. 885, 890 (2004) (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). "[P]olice questioning, by itself, is unlikely to result in a Fourth

Amendment violation." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

A consensual encounter can ripen into a seizure if "in light of all of the circumstances, 'a reasonable person [would] have believed that he or she was not free to walk away.' " *United States v. Grant*, 920 F.2d 376, 382 (6th Cir.1990) (quoting *United States v. Saperstein*, 723 F.2d 1221, 1225 (6th Cir.1983)).

In *United States v. Noble*, 762 F.3d 509, 519 (6th Cir. 2014), the Court in analogizing a traffic stop to a Terry stop held that an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 468 U.S. at 439, 104 S.Ct. 3138; but see *Muehler v. Mena*, 544 U.S. 93, 101–02, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (upholding questioning slightly more afield as reasonable).

"The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case," but the duration of the stop must not be "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality). *Id*. at 519.

The issue is determining whether the " 'totality of the circumstances surrounding the stop' indicates that the duration of the stop as a whole—including any prolongation due to suspicionless unrelated questioning—was reasonable." *United States v. Cochrane*, 702 F.3d 334, 341 (6th Cir. 2012).

Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment even if the purpose of the stop is limited and the resulting detention quite brief." *United States v. Bell,* 555 F.3d 535, 539 (6th Cir.2009). The Fourth Amendment permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir.2002).

During a valid traffic stop, police officers may ask extraneous questions unrelated to the purposes of the stop, "so long as those

9

inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson,* 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (citing *Muehler v. Mena,* 544 U.S. 93, 100–01, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)). "Applying *Muehler* and *Johnson,* we have declined to impose 'a categorical ban on suspicionless unrelated questioning that may minimally prolong a traffic stop.' " *Everett,* 601 F.3d at 492.

Butler's contact with law enforcement fails to rise to the level of any Fourth Amendment violation. When law enforcement first approached Butler, it was as a result of the traffic stop.  Butler, through his statements at that time regarding his headlights, confirmed that he had some idea as to why he had been stopped. During that brief period, the officers noticed the smell of marijuana and then inquired about it and of Butler whether they could search him and his car.  Butler consented to the searches.

The question of whether consent to search is freely and voluntarily given "is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To be valid, consent must be "unequivocally, specifically, and intelligently given, uncontaminated by

10

any duress or coercion." *Cochrane*, Id, at 342 (6th Cir. 2012) citing

*United States v. Worley*, 193 F.3d 380, 386 (6th Cir.1999) (internal

quotation marks omitted).

Consent to search is a well-established exception to the Fourth

Amendment's warrant requirement. See *Davis v. United States*, 328

U.S. 582, 593–94, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). "The government

bears the burden of proving, through 'clear and positive testimony' that

the consent to search was given voluntarily." U*nited States v.*

*Beauchamp,* 659 F.3d 560, 570 (6th Cir.2011) (quoting U*nited States v.*

*Salvo*, 133 F.3d 943, 953 (6th Cir.1998)). Courts should consider several

factors when evaluating whether consent was voluntary, including: the

age, intelligence, and education of the suspect; whether the suspect

understands the right to refuse consent, *Id.* at 572; the length and

nature of the detention; the use of coercive or punishing conduct by the

police, *Bustamonte,* 412 U.S. at 226, 93 S.Ct. 2041; and indications of

"more subtle forms of coercion that might flaw [the suspect's]

judgment," *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46

L.Ed.2d 598 (1976). *United States v. Cochrane,* 702 F.3d 334, 342 (6th

Cir. 2012).

11

When Officer Teschendorf conducted a pat down search of Butler with Butler's consent, he encountered an object between Butler's buttocks that, while not a weapon, exhibited the characteristics of someone carrying controlled substances.  If a police officer "reasonably believes or suspects" that the defendant is armed, he may conduct a pat down for weapons in the interest of his own safety. *Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338 (1979).   The Terry doctrine permits only a search for weapons, not for evidence in general. See *Id.* at 93–94, 100 S.Ct. 338.

Under the plain feel doctrine, however, an officer may seize an "object whose contour or mass" makes its identity as contraband "immediately apparent." *Minnesota v. Dickerson,* 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *United States v. Garcia,* 496 F.3d 495, 505 (6th Cir. 2007); see also *United States v. Walker,* 181 F.3d 774, 778 (6th Cir.1999) (holding that "police officers may seize nonthreatening contraband detected during a protective patdown search ... so long as the officers' search stays within the bounds marked by Terry."

In this case, Butler clearly and unequivocally consented to the search of his car and his person. It was when Butler attempted to frustrate the search by Officer Teschendorf after Teschendorf felt what he believed to be narcotics in Butler's pants that Butler was placed in custody. Once the police also determined that a valid arrest warrant existed for Mr. Butler, he was advised that he was being arrested on that warrant as well.

The alleged constitutional violation also does not warrant suppression of the evidence—namely, controlled substances—found on the Defendant's person. "[W]here 'tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." U*nited States v. Witherspoon,* 467 F. App'x 486, 490 (6th Cir. 2012) (quoting *Murray v. United States*, 487 U.S. 533, 539 (1988)). This rule applies "(1) when an independent, untainted investigation ... inevitably would have uncovered the same evidence'; or (2) when there exist 'other compelling facts establishing that the disputed evidence inevitably would have been discovered.' " *Id.*

In this case, upon identifying Mr. Butler and the outstanding warrant for his arrest, he would have been taken into custody. Incident to the Defendant's arrest on the outstanding warrant, the officers would be permitted to perform a search of the Defendant's person for any other contraband or evidence related to drug-trafficking.

See *Chimel v. California*, 395 U.S. 752, 763 (1969) (holding that a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person); *United States v. Mohammed*, 512 F. App'x 583, 589 (6th Cir. 2013) (upholding inevitable discovery doctrine as the basis for denial of motion to suppress when evidence seized from defendant's person would ultimately have been uncovered by search incident to arrest); *United States v. McGlown,* 150 F. App'x 462, 467-68 (6th Cir. 2005) (holding that cocaine found in the defendant's pocket would have been seized inevitably where probable cause existed for officers to arrest the defendant for carrying a concealed weapon and for reckless discharge of a firearm, and where following routine procedures, once defendant was placed under arrest, the officers would have discovered the cocaine during a search incident to arrest); *United States v. Kaye*, 492 F.2d 744, 746 (6th Cir. 1974) ("[I]ncident to making a

14

lawful custodial arrest, a full search of the person may be made without a warrant.").  The Court in *United States v. Jackson*, WL 4471741, (E.D. Ky. Sept. 18, 2018) held that officers who would have inevitably discovered drugs in a Defendant's underwear as a result of a valid arrest, even if the original reason to search the defendant were deemed invalid, would make suppression of the evidence found on the Defendant's person unwarranted.

Following his arrest and more complete search at the Westland Police Department, Defendant Butler, after being advised of his Miranda Rights, provided a signed and oral statement to Officer Richardson.   Defendant Butler fails to provide any detail as to his allegation that the video tape of his interrogation demonstrates any previous un-Mirandized custodial interrogation.

### Failing to preserve dash video does not constitute a Brady Violation

With respect to the Defendant's Brady violation allegation, it is premised on the assumption that Mr. Butler's claims of proper headlights, intact windshield, and refusal to consent to search are true. The government disputes those allegations.

Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* (emphasis added) (citing *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

The same strict rule, however, does not apply to potentially exculpatory evidence. Because courts would "face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed," the government's failure to preserve "potentially exculpatory evidence" does not raise a similar constitutional problem. *Trombetta,* 467 U.S. at 486, 104 S.Ct. 2528. So long as government officials do not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny," so long as they act "in good faith and in accord with their

16

normal practice," and so long as "[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory evidence," *Id.* at 488, 104 S.Ct. 2528, their actions do not offend the Due Process Clause. See also A*rizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ( "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir.1996) (…the unconstitutionality of a failure to "preserve evidence whose exculpatory value is indeterminate" turns on (1) the government's "bad faith in failing to preserve the evidence," (2) whether "the exculpatory value of the evidence was apparent before its destruction" and (3) whether "the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means").

## Conclusion

For all of the foregoing reasons, the United States respectfully requests that Defendant's Motion to Suppress Search and Statement (ECF#20) be denied.

MATTHEW SCHNEIDER
United States Attorney

*s/John N. O'Brien II*
John N. O'Brien II
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
(313) 226-9715
John.obrien@usdoj.gov

Date: March 7, 2019

CERTIFICATE OF SERVICE

I hereby certify that on Thursday, March 07, 2019, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which

will send notification of such filing to the following:

Casey N. Swanson
Casey_Swanson@fd.org


s/John N. O'Brien II
John N. O'Brien II
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
(313) 226-9715
John.obrien@usdoj.gov
P39912