UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,      Case No. 18-cr-20801

v.                              Judith E. Levy
                               United States District Judge

Ransom Murray Butler,
                               Mag. Judge Anthony P. Patti
        Defendant.

_____/

**ORDER DENYING WITHOUT PREJUDICE
DEFENDANT RANSOM MURRAY BUTLER'S
MOTION FOR COMPASSIONATE RELEASE [38]**

Before the Court is Defendant Ransom Murray Butler's motion for compassionate release from FMC Lexington due to the ongoing COVID-19 pandemic. (ECF No. 38.) For the following reasons, Defendant's motion is DENIED WITHOUT PREJUDICE.

**Background**

On January 21, 2020, the Court sentenced Defendant to sixty months' imprisonment after he pled guilty to one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 37.)

On June 24, 2021, Defendant moved for compassionate release and/or reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] (ECF Nos. 38, 47.) Defendant seeks compassionate release in light of the COVID-19 pandemic and because he "contends that he is at high risk of contracting the novel virus." (ECF No. 38, PageID.177; *see id.* at PageID.178.) He states that he is "an African American male who has hypertension, and is clearly in a facility that cannot meet the needs of his safety." (*Id.* at PageID.175.) Defendant states that the pandemic was unforeseen (*see id.*) and that

> the reality of FMC-Lexington being able to protect the health and welfare of [Defendant] is impossible. Several [h]undred inmates have been infected, 9 total inmate deaths and a large number of staff infected as well. Incarcerated people are at a special risk of infection and are less able to participate in practice measures to keep themselves safe. The conditions in BOP facilities provide a uniquely hospitable environment for covid-19 to spread, "especially here at FMC_Lexington."

---

[1] Defendant states that he also seeks relief under 18 U.S.C. § 4205(g) (*see* ECF No. 38, PageID.176), but the portions of his motion that discuss the applicable legal standard and the basis for relief reference only 18 U.S.C. § 3582(c)(1)(A)(i). Regardless, "18 U.S.C. [§] 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date. For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. [§] 3582(c)(1)(A)." 28 C.F.R. § 572.40 (2021). Defendant's offense occurred on September 1, 2018 (*see* ECF No. 33, PageID.118), so § 3582(c)(1)(A) applies here.

2

(*Id.* at PageID.176; *see id.* at PageID.179.) Defendant believes that FMC Lexington is unable to combat the virus, so it is more dangerous for him to be incarcerated than to be on home confinement. (*See id.* at PageID.178; ECF No. 48, PageID.421.) Defendant indicates that "the vaccine is available in FMC-Lexington, and he has been vaccinated, but this still haven't stop [sic] the virus variant[2] from spreading, and inmates that have been vaccinated is still being infected a second time." (ECF No. 38, PageID.178; *see* ECF No. 48, PageID.422.) Medical records provided by the government indicate that Defendant received a dose of the Moderna vaccine in February 2021 and another in March 2021. (*See* ECF No. 45-1, PageID.286.)

Defendant argues that "[e]xtraordinary and compelling circumstances exist" because "F[MC] Lexington has inmates suffering serious physical and mental conditions, this facility is struggling with combating the virus. Also covid-19 falls under such an other [sic] reason

---

[2] Defendant's motion references the Delta variant. However, "[a]s of December 20, 2021, [the] Omicron [variant] has been detected in most states and territories and is rapidly increasing the proportion of COVID-19 cases it is causing." *Omicron Variant: What You Need to Know*, Centers for Disease Control and Prevention (Dec. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html. Therefore, this Order addresses the Delta and Omicron variants.

that may present extraordinary and compelling reason[s] for a sentence reduction and/or compassionate release, and so does Mr. Butler's post conviction rehabilitation."³ (ECF No. 38, PageID.177; *see id.* at PageID.178.) Defendant argues that his rehabilitation "fall[s] under extraordinary and compelling" because "[t]he Government did not see this type of change coming with Mr. Butler during the time of his sentencing. . . . The reality of the matter is Mr. Butler has changed his life, and this wasn't forseen [sic] at the time of sentencing." (ECF No. 48, PageID.420; *see id.* at PageID.421.)

In addition, Defendant indicates that he has two daughters "seperate [sic] from his marriage," and one of his daughters "is in need of her father due to some mental and medical issues that her mother is dealing with at this current time." (ECF No. 38, PageID.178; *see* ECF No. 48, PageID.419 (stating that he has "children who is [sic] in need of

---

³ Regarding his rehabilitation efforts, Defendant indicates that he "has taken 22 respected and qualified programs to help him maintain positive and constructive behavior if granted relief," he "is currently enrolled in the 500 hour Residential Drug Abuse Program (RDAP) and is scheduled to finish December 3, 2021," he "has maintained clear conduct in the past 12 months, to qualify for compassionate release," and he "plans to also pursue drug and alcohol treatment as well as any other programs to help with recovery and any other treatment issues once granted release by the Honorable Court." (ECF No. 38, PageID.178; *see id.* at PageID.181–182; *see also* ECF No. 48, PageID.420–422.)

4

his guidance"); ECF No. 48, PageID.421 (stating that his "[m]ost important" goal is to "be their [sic] to help provide and support his kids").) Defendant states that he is "ready to come home and assist where there is aide needed in regards of the pandemic and crisis" and that "he is more beneficial if he was at home with his wife and children during these rough time[s] our Country is going through." (ECF No. 38, PageID.178.)

Defendant states that he "has exhausted his administrative remedies." (*Id.* at PageID.177.) Attached to his motion is a letter dated February 24, 2021 that is signed by "P. Adams, Warden." (*Id.* at PageID.180.) The letter states that it is a response to Defendant's February 9, 2021 correspondence "request[ing] to be considered for a Compassionate Release or Reduction in Sentence (RIS) based on extraordinary and compelling circumstances: risk of COVID-19." (*Id.*; *see id.* at PageID.184; *see* ECF Nos. 42-3, 42-4.) The letter denies Defendant's request as follows:

> The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting

5

> COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

(ECF No. 38, PageID.180.) The government does not dispute that Defendant has exhausted his administrative remedies. (*See* ECF No. 42, PageID.202.)

In his filings, Defendant asks that "counsel be appointed to help assist with his motion moving forward." (ECF No. 38, PageID.179; *see* ECF No. 48, PageID.423.)

**Analysis**

Compassionate-release motions require a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). First, "the court must 'find' that 'extraordinary and compelling reasons warrant [a sentence] reduction.'" *Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101). Second, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting *Jones*, 980 F.3d at 1101). Third, the Court must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101).

6

"If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Court denies Defendant's motion for compassionate release because his access to the COVID-19 vaccine mitigates the concern about extraordinary and compelling circumstances that might otherwise compel release. The Sixth Circuit has "cast doubt on a defendant's ability to meet Section 3852's [sic] 'extraordinary and compelling reasons' requirement following their inoculation against COVID-19." *United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021) (quoting *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021); citing *United States v. Traylor*, 16 F.4th 485, 485 (6th Cir. 2021)). That court has acknowledged that "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id.* (quoting *Lemons*, 15 F.4th at 751). Additionally, the Centers for Disease Control and Prevention (CDC) advise that the Moderna vaccine is 94.1% effective at preventing "laboratory-confirmed COVID-19 infection" in individuals who have not previously contracted

7

COVID-19 and that "COVID-19 vaccines offer similar protection in real-world conditions as they have in clinical trial settings—reducing the risk of COVID-19, including severe illness, by 90% or more among people who are fully vaccinated."[4] *Moderna COVID-19 Vaccine Overview and Safety*, Centers for Disease Control and Prevention (Feb. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html. The Moderna vaccine "was also effective in clinical trials at preventing COVID-19 among people of diverse age, sex, race, and ethnicity categories and among people with underlying medical conditions." *Id.* "COVID-19 vaccines are effective at preventing infection, serious illness, and death." *COVID-19 Vaccines Work*, Centers for Disease Control and Prevention (Dec. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

The CDC states that "[v]accine effectiveness against hospitalizations has remained relatively high over time, although it tends to be slightly lower for older adults and for people with weakened

---

[4] The CDC indicates that "the definition of fully vaccinated . . . does not include the booster shot. Everyone is . . . considered fully vaccinated two weeks after their second dose in a two-shot series, such as the . . . Moderna vaccines . . . ." *COVID-19 Vaccine Booster Shots*, Centers for Disease Control and Prevention (Jan. 21, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html.

immune systems."[5] *Id.* "Even when people who are fully vaccinated develop symptoms of COVID-19, they tend to be less severe than in people who are unvaccinated." *Id.* With respect to variants, the CDC states that "COVID-19 vaccines are effective against the Delta variant

---

[5] According to the CDC, "[p]eople who are immunocompromised [or have a weakened immune system] are especially vulnerable to COVID-19." *COVID-19 Vaccines for Moderately or Severely Immunocompromised People*, Centers for Disease Control and Prevention (Jan. 7, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html. "Many conditions and treatments can cause a person to be immunocompromised or have a weakened immune system." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC indicates that

> [p]eople are considered to be moderately or severely immunocompromised if they have:
>
> - Been receiving active cancer treatment for tumors or cancers of the blood
> - Received an organ transplant and are taking medicine to suppress the immune system
> - Received a stem cell transplant within the last 2 years or are taking medicine to suppress the immune system
> - Moderate or severe primary immunodeficiency (such as DiGeorge syndrome, Wiskott-Aldrich syndrome)
> - Advanced or untreated HIV infection
> - Active treatment with high-dose corticosteroids or other drugs that may suppress your immune response

*COVID-19 Vaccines for Moderately or Severely Immunocompromised People*, Centers for Disease Control and Prevention (Jan. 7, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html.

and other variants with widespread circulation in the United States. **Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant.**" *Id.* (emphasis in original); *see COVID-19 Vaccines*, National Institutes of Health, https://covid19.nih.gov/treatments-and-vaccines/covid-19-vaccines (last visited Feb. 1, 2022) ("Studies and current data show that the antibodies our bodies make after vaccination recognize and protect against COVID-19 variants.").

The Sixth Circuit instructs that "a district court abuses its discretion by granting a sentence reduction under Section 3582(a) when the inmate 'largely faces the same risk from COVID-19 as those who are not incarcerated' after being vaccinated." *Sweet*, 2021 WL 5371402, at *3 (quoting *Lemons*, 15 F.4th at 751). Defendant, who is thirty-seven years old, is not an older adult and does not demonstrate that he has a weakened immune system that affects vaccine effectiveness.[6] Because

---

[6] Defendant states that he has hypertension, which the CDC identifies as a medical condition that can possibly "make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from

10

existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant. In other words, given that COVID-19 vaccines mitigate the potential harm of the Delta and Omicron variants, it is not an "extraordinary and compelling reason" to grant compassionate release.

To the extent that Defendant argues that he is at high risk of contracting COVID-19 because he has hypertension, Defendant's medical records reflect that hypertension was "[d]enied" on four occasions. (ECF No. 45-1, PageID.259; ECF No. 45-2, PageID.340, 346, 351.) His blood pressure was recorded as 137/67 on June 10, 2021 (*see* ECF No. 45-1, PageID.232); 129/74 on March 15, 2021 (*see id.* at

---

COVID-19."). But the CDC does not identify hypertension as a condition that "cause[s] a person to be immunocompromised or have a weakened immune system." *Id.*; *see COVID-19 Vaccines for Moderately or Severely Immunocompromised People*, Centers for Disease Control and Prevention (Jan. 7, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html; *Types of Primary Immune Deficiency Diseases*, National Institute of Allergy and Infectious Diseases (Sept. 13, 2019), https://www.niaid.nih.gov/diseases-conditions/types-pidds. As a result, Defendant does not show that hypertension causes him to have a weakened immune system. *See United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (determining that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

11

PageID.247); 133/72 on February 23, 2021 (*see id.* at PageID.251); and 142/84 on March 9, 2020. (*See* ECF No. 45-2, PageID.354). On March 1, 2020, Defendant's blood pressure was recorded as 160/90 when he reported lower back pain that he rated as a ten on a pain scale of zero to ten. (*See* ECF No. 45-2, PageID.336.) In his reply, Defendant argues that the records are "far from the truth, because we know . . . through medical studies that hypertension is haretitary [sic] when in refference [sic] to the African American population." (ECF No. 48, PageID.422.)

As noted, the CDC indicates that hypertension is a medical condition that can possibly "make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19."). "[W]hile courts are not fully settled on the significance of hypertension in a request for compassionate release, many have found the diagnosis is not

12

sufficient to show extraordinary and compelling circumstances, especially if the condition is well managed." *United States v. Black*, No. 17-20656, 2020 WL 7021696, at *3 (E.D. Mich. Nov. 30, 2020) (Michelson, J.) (internal citations omitted). "[C]ourts 'routinely' decline to grant compassionate release where an inmate's hypertension can be well-managed through medication." *United States v. Tolbert*, No. 13-20160, 2021 WL 6112177, at *3 (E.D. Mich. Dec. 27, 2021) (Goldsmith, J.) (citing *United States v. Ackerman*, No. 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020); *United States v. Evans*, No. 3:18-cr-637, 2021 WL 424317, at *2 (E.D. Mich. Feb. 8, 2021)). Here, there is no indication that Defendant has a hypertension diagnosis, is being treated for hypertension, or has hypertension that cannot be well-managed through medication. Therefore, Defendant's hypertension does not provide a basis for granting compassionate release. *See Elias*, 984 F.3d at 520 (concluding that the "district court could have denied [a defendant's] motion for compassionate release on th[e] basis" that the defendant "did not provide any records in her motion to support that she has hypertension").

Defendant's generalized fear of COVID-19, significant rehabilitation efforts, and desire to be with his family do not constitute extraordinary and compelling reasons to grant compassionate release either. "Courts in the Eastern District of Michigan routinely refuse to find that a fully vaccinated prisoner has an extraordinary and compelling reason for release because of their fear of contracting COVID-19." *United States v. Taylor*, No. 2:17-cr-20640-3, 2021 WL 2283743, at *2 (E.D. Mich. June 4, 2021) (Murphy, J.) (internal citation omitted). This court has noted that

> [w]ith respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). *See Elias*, 984 F.3d at 521.

*United States v. Smith*, No. 10-20388, 2021 WL 3077879, at *2 (E.D. Mich. July 21, 2021) (Goldsmith, J.). In this case, Defendant has not

14

"point[ed] to specific conditions that create a higher risk that [he] will contract the virus." *Id.* As discussed above, Defendant is fully vaccinated, is thirty-seven years old, and does not have a weakened immune system. Based on the CDC's guidance, these factors do not make Defendant particularly vulnerable to a bad outcome if he contracts a breakthrough case of COVID-19.

Moreover, the Court commends Defendant's rehabilitation efforts, but "Congress has made clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for compassionate release." *United States v. Burlingame*, No. 1:15-cr-20042, 2021 WL 5198510, at *3 (E.D. Mich. Nov. 9, 2021) (citing 28 U.S.C. § 994(t); *United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020); *United States v. Hatcher*, No. 01-80361, 2021 WL 1056841, at *3 (E.D. Mich. Mar. 19, 2021)), *appeal dismissed*, No. 21-1421, 2021 WL 3234549 (6th Cir. July 1, 2021).

Finally, "district courts continue to 'routinely den[y] motions for compassionate release when the defendants cannot show that they would be the only available caregiver of a minor child, even if their incarceration imposes substantial burdens on a spouse or co-parent to a

minor child.'" *United States v. Gibson*, No. 11-20551, 2021 WL 2549682, at *4 (E.D. Mich. June 22, 2021) (footnote omitted) (Cleland, J.) (collecting cases); *see United States v. Jordan*, No. 17-20593, 2020 WL 6060647, at *2 (E.D. Mich. Oct. 14, 2020) (Michelson, J.) (concluding that the defendant's "desire to go home to be with his children and start a new job bodes well for his future, but it . . . is not unique or extraordinary" (internal citations omitted)). Here, Defendant does not indicate that he would be the "only available caregiver of a minor child," *Gibson*, 2021 WL 2549682, at *4, and his desire to be with his wife and children is not an extraordinary and compelling reason justifying release.

For the reasons set forth above, the Court does not find that extraordinary and compelling circumstances exist. However, Defendant is free to renew his motion should more information emerge suggesting that the Moderna vaccine cannot protect him from new imminent strains of COVID-19. Because there are no extraordinary and compelling reasons for release, the Court need not consider the remaining compassionate release factors at this time. *See Elias*, 984 F.3d at 519 ("clarify[ing] that . . . district courts may deny

16

compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" (citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006)).

Defendant seeks the appointment of counsel. (*See* ECF No. 38, PageID.179; ECF No. 48, PageID.423.) "The appointment of counsel for postconviction proceedings is a matter of the court's discretion, not a constitutional right." *United States v. Green*, No. 07-20411, 2021 WL 1179338, at *1 (E.D. Mich. Mar. 29, 2021) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004); *United States v. Prater*, No. 7:15-11-DCR-3, 2020 WL 2616120, at *2 (E.D. Ky. May 22, 2020)). "Because [Defendant] has not articulated a colorable claim for compassionate release, the [C]ourt will deny his request for the appointment of counsel." *United States v. Mullins*, No. 06-20015, 2020 WL 5422300, at *3 (E.D. Mich. Sept. 10, 2020).

**Conclusion**

Accordingly, Defendant's motion for compassionate release (ECF No. 38) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: February 2, 2022  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 2, 2022.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager